UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PENNY DAVENPORT, individually and on behalf of a class of others similarly situated, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:12CV0007 AGF |
| CHARTER COMMUNICATIONS, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid wages and overtime compensation. Plaintiff, Penny Davenport, and other similarly situated persons, were employed as customer service representatives at call centers operated by Defendant Charter Communications, LLC. Plaintiff moves, pursuant to § 16(b) of the FLSA, for conditional certification[1] of a class consisting of Defendant's former and current employees who, at any time in the last three years, staffed dedicated telephone lines at Defendant's eight call centers. In addition, Plaintiff seeks approval of a form of notice to be sent to Defendant's past and present employees and provide them the opportunity to "opt in" as plaintiffs in this litigation. In support of her motion, Plaintiff offers declarations from eleven current and former employees who

---

[1] Plaintiff also seeks, in separate motions, to certify a class action under Federal Rule of Civil Procedure 23 for state law statutory claims under the laws of the eight states in which its call centers are based. *See*, *e.g.,* Missouri Minimum Wage Law (MMWL), Mo. Rev. Stat. §290.500 *et seq*. None of the state law claims are the subject of the instant motion.

worked at three of Defendant's eight call centers in Town and Country, Missouri; Louisville, Kentucky; and Walker, Michigan.

Defendant opposes conditional certification on several grounds, but its chief objection is that Plaintiffs have not demonstrated that the members of the proposed class were subject to substantially similar policies or practices with respect to the alleged underpayments.

For the reasons set forth below, the Court grants the motion for conditional certification.

## **BACKGROUND**

Defendant, a broadband service provider, operates eight customer service call centers, in eight states.[2] At each call center, toll-free customer support telephone lines are staffed by exempt, salaried employees and non-exempt, hourly employees. Plaintiffs, employed as "advisors," respond to incoming calls from customers on the toll free lines. As non-exempt, hourly employees the advisors are entitled to receive overtime compensation.

At the beginning of each work shift, Plaintiff Davenport[3] and other advisors were required to log in to their phones, boot up their computers, and open various programs

---

[2] The call centers are located in Town and Country, Missouri; Walker, Michigan; Louisville, Kentucky; Greenville, South Carolina; Vancouver, Washington; Rochester, Minnesota; Fond du Lac, Wisconsin; and Worcester, Massachusetts.

[3] Apart from her allegations regarding the login/logout process, Davenport's employment history with Defendant is not particularly relevant here, but the Court will summarize it briefly. Beginning in February 2008, Defendant employed Davenport at its Town and Country call center. After an initial training period, Plaintiff was employed as an advisor, a position she held at the Town and Country call center until she was

and applications used in responding to calls. An advisor must be logged in to the phone system to receive customer calls, and once logged in to the phone, the advisor is on the clock.

There are two login methods. An advisor may log in to the phone itself and then boot up the computer and open needed software programs and applications. This method is known as the "hard phone." In the alternative, an advisor employing the "soft phone" method first boots up her computer, opens the necessary programs and applications, and then logs in to the phone system through the computer. Both login options are also available for logging out at the end of a shift and before and after unpaid meal breaks.

## II. Plaintiff's Allegations

Plaintiff asserts that Defendant requires use of the "soft phone" method in order to assure that an advisor is ready to receive calls as soon as she has logged into the phone and to maximize the number of calls taken during a shift. Plaintiff also asserts that use of either login method results in approximately one minute of unpaid time at the beginning of each shift or upon returning from each unpaid meal break. Plaintiff further contends that use of the "soft phone" method results in approximately three minutes of unpaid time at the end of a shift and at the start of unpaid meal breaks.

---

terminated in December, 2011, for bringing a gun to work. Plaintiff has testified at deposition that her employment experience with Defendant was not typical, because she was discriminated against. Plaintiff believes she was treated differently with respect to unpaid work and that she faced more challenges meeting her performance metrics, or compliance thresholds, because of this discrimination.

Plaintiff offers eleven very similar declarations from present and former employees at three of Defendant's call centers stating that Defendant maintained the same "ready to work," "compliance" (or "schedule adherence"), and "end of shift" policies and practices at each of the centers. Plaintiff further states that these uniform policies resulted in unpaid work. Plaintiff alleges that the "ready to work" and "time keeping" policies were included in the employee handbook disseminated to all of Defendant's employees. With respect to the other five call centers, the declarants state that at the time they received their training they were told by trainers or, in one case, a supervisor that the policies at their call centers regarding login and logout procedures were the same at all of Defendant's call centers.

In addition to the policies and training directives to use the soft phone method, Plaintiff also asserts that off-the-clock work was necessary to meet Defendant's required "compliance thresholds" with respect to "schedule adherence." By way of these schedule adherence measures, Defendant tracks the accuracy of an advisor's clock-in and clock-out times and requires some percentage, for example 97%, of these times to match an advisor's assigned shift-start and -end times. Plaintiff contends that advisors were threatened with discipline, disciplined, or discharged for failing to meet these thresholds. Plaintiff also asserts that she "regularly observed" others working off the clock.

### III. **Defendant's Arguments**

In response, Defendant asserts that the policies, procedures, and management practices central to Plaintiff's allegations vary from location to location. Defendant

contends that there are differences between policies effective at Town and Country, Walker, and Louisville, the three call centers where the declarants work.

Defendant further argues that each facility has implemented its own training procedures for advisors. Defendant points out, for example, that the training process at the Walker call center differs from Louisville's, but asserts that all training protocols ensure that advisors are fully paid. Defendant contends that during the Louisville training protocol, advisors learn to log in to the hard phone before they even start their computers. In addition, Defendant asserts that the training in Louisville does not include any specific discussion about the "ready to work" policy, other than urging advisors to arrive by their scheduled start time.

Defendant offers declarations from employees at the other five call centers referenced in the complaint and notes that Plaintiff offers no declarations or other direct evidence with respect to these other call centers. Defendant further asserts that none of the policies about which Plaintiff complains apply in these other centers. Defendant challenges Plaintiff's claim that she was told to log in to her other programs and applications before logging in to her phone. Defendant points out that Plaintiff's claim is inconsistent with testimony from employees at the other five call centers stating that, consistent with Defendant's written policy, they were instructed to log in to the phone first regardless of whether they used the hard or soft phone method to do so. With respect to knowledge of routines or procedures followed by other advisors at her call center or others, Defendant notes that Plaintiff admitted in her deposition that she had no

actual knowledge of the routines or procedures followed by anyone else and was unable to identify a single other employee who she had observed working off-the-clock.

## **APPLICABLE LAW**

Pursuant to Section 7 of the FLSA, an employer may not subject a non-exempt employee to a work week in excess of 40 hours unless the employee is compensated for her time with additional pay of at least one and one half times her regular hourly wage. 29 U.S.C. § 207. The FLSA also provides that any employer who violates this restriction "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An action to recover overtime pay and liquidated damages may be maintained "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." *Id*.

A collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23. *Davis v. Novastar Mortg., Inc.,* 408 F. Supp. 2d 811, 814-15 (W.D. Mo. 2005). A primary distinction is that under Rule 23 class members must opt-out to avoid being bound by the judgment. *Id*; *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards).

The FLSA does not define the term "similarly situated." And the Eighth Circuit Court of Appeals has not enunciated a standard under § 216(b) for determining whether potential opt-in plaintiffs are "similarly situated." However, the district courts in this Circuit uniformly apply a two-step analysis. *See, e.g., Fry v. Accent Mktg. Serv., L.L.C.*,

No. 4:13 CV59 CDP, 2013 WL 4093203, at *2 (E.D. Mo. Aug. 13, 2013); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007); *Davis*, 408 F. Supp. 2d at 814-15; *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005); *McQuay v. Am. Int'l Group., Inc.*, No. 4:01CV00661 WRW, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002).

Plaintiff moves for conditional certification under the first of those steps. *See Davis*, 408 F. Supp. 2d at 815. At the first step in the process, a plaintiff's burden is not onerous, *Kautsch v. Premier Communications*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007), and the court does not reach the merits of a plaintiffs' claims. *See Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005).

Conditional certification at the first, or notice, stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Davis*, 408 F. Supp. 2d at 815 (citation omitted). A plaintiff can meet this burden by "making a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ondes v. Monsanto Co.*, No. 4:11CV197 JAR, 2011 WL 6152858, at *3 (Dec. 12, 2011) (citations omitted). Perhaps most importantly, a plaintiff need not show that members of the conditionally certified class are "actually similarly situated." *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2007 WL 1796205, at *3 (W.D. Mo. June 19, 2007); *see also Dernovish v. AT & T Operations, Inc.*, No. 09–0015–CV–W–ODS, 2010 WL 143692, at *1 (W.D. Mo. Jan.12, 2010).

At first-stage certification the court exercises its discretion to determine whether a collective action is appropriate, *see Heartland*, 404 F. Supp. 2d at 1149 (citation omitted), but makes no "credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *McCallister v. First Banks, Inc.*, No. 4:13CV561 HEA, 2014 WL 988448, at *2 (E.D. Mo. Mar. 13, 2014) (citing *Ahle v. Veracity Research Co.*, No. 09-00042, 2009 WL 3103852, at *3 (D. Minn. Sept. 23, 2009). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to opt-in." *Dernovish*, 2010 WL 143692, at *3 (internal quotations and citation omitted); *Parker*, 492 F. Supp. 2d at 1159.

At the second step of the process, which usually occurs after the close of discovery when the factual record is more fully developed, the defendant may move to decertify the class. *See Beasly v. GC Services LP*, 270 F.R.D. 442, 444 (E.D. Mo. 2010). "At that time, applying a stricter standard, the court makes a factual determination on the similarly situated question." *Ondes*, 2011 WL 6152858, at *2 (internal quotation omitted). To maintain certification of the class, the plaintiff will be required to show, and a court is better able to assess, whether the class members are, in fact, "similarly situated." *Dernovish*, 2010 WL 143692, at *3; *see also Davis*, 408 F. Supp. 2d at 815. Even at that juncture, however, "class members need not be identically situated" in order to meet the requirements for certification. *Fast*, 2007 WL 1796205, at *4.

# DISCUSSION

## I. Conditional Certification

Upon review of Plaintiff's allegations, the Court is satisfied that Plaintiff has cleared the relatively low hurdle required for first-stage conditional certification. Plaintiff has adequately alleged that she and the other employees she seeks to represent were required to perform similar work without pay, and she has adequately described the work and the processes of logging in and logging out in sufficient detail to permit the proposed members of the collective action who performed similar tasks to be identified and notified of the action. *See, Simmons*, No. 4:10CV00625 AGF, 2011 WL 855669, at *3 (Mar. 9, 2011) (conditionally certifying a collective action involving unpaid overtime at call center despite defendant's claims that login requirements could differ among trainees, supervisors and customer service representatives); *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 507 (W.D. Pa. 2009) (conditionally certifying a collective action involving unpaid overtime at call centers and noting that "[e]numerating the specifics of how each call center accounts for employee work hours does not counter an allegation of a common policy of denying payment for such hours"); *Busler v. Enersys Energy Products, Inc.*, No. 09–00159–CV–W–FJG, 2009 WL 2998970, at *3 (W.D. Mo. Sept. 16, 2009) (conditionally certifying a collective action, despite potential distinctions among plaintiffs, because plaintiffs presented enough evidence at initial stage that employees were similarly situated and subject to a common practice).

The declarations from eleven employees from three call centers, stating that the ready to work policy and the performance metrics associated with clocking in and out

essentially require Plaintiffs to work off-the-clock, meet the required standard. The Court notes that at least some support for the declarants' statements is found in a handbook distributed to each employee. Further, most of the declarants in Plaintiff's affidavits aver that the trainer or supervisor who trained them advised that the directive to use the soft phone process to log in and log out applied at the other facilities. Based on this evidence, the Court cannot conclude that Plaintiff's assertions regarding a uniform policy are unfounded.

In the Court's view, Plaintiff has satisfied the requirement that she make a modest factual showing to support her allegations. And this is not a case where a plaintiff has failed to provide any competent evidence of a company-wide policy. *See Wacker v. Personal Touch Home Care, Inc.*, No. 4:08CV93 CDP, 2008 WL 4838146, at *4 (E.D. Mo. Nov. 6, 2008) (holding that where there is no evidence of a company-wide policy, company-wide certification is inappropriate ); *Garner v. Regis Corp.*, No. 03–5037–CV–SW–SWH, 2004 WL 5455905, at *2 (W.D. Mo. Aug. 5, 2004) (same).

Defendant contends that the declarations here exhibit the same deficiencies as those offered and found wanting by the court in *Settles v. General Elec.*, Case No. 12-00602-CV-W-BP, slip opinion at 1 (W. D. Mo. February12, 2013). In *Settles*, the court refused to conditionally certify an FLSA class, relying in part on the deficiency of certain declarations submitted in support of the motion to certify. *Id.*, slip op. at 5-6. Specifically, the court found the plaintiff failed to offer "evidence that any managers knew about or facilitated the illegal overtime practices of which he complains and, thus,

fails to establish that the employees were victims of a single decision, policy or plan." *Id.*, slip op. at 6.

The Court does not agree that the declarations offered here suffer from the same deficiencies as those in *Settles*. The declarants in this case have stated that specific supervisors and trainers knew about and directed them to follow procedures resulting in unpaid work. Unlike *Settles*, this is not a case "[w]here there is no evidence, even contested, that managers failed to follow FLSA policies or affirmatively directed and approved alleged improper practices." *Id.* at 7; *see also Garner*, 2004 WL 5455905, at*2-3.

Defendant has also argued that the affidavits filed by Plaintiff with respect to the practices at other call centers are not competent or sufficient, and should be stricken, as they are based on inadmissible hearsay and are not based on personal knowledge. The main remaining assertion Defendant challenges[4] is the statement made by the declarants that when they first began their employment with Charter, "the trainers said that the same policies [regarding logging in and out] applied throughout all of Charter's call centers." *See, e.g.,* Affidavit of Justin Ansell, at ¶ 5, Doc. No. 58-3 at 2.

---

[4] Defendant originally filed a motion to strike the two affidavits Plaintiff filed in support of her initial motion for conditional certification. Doc. No. 26. But Plaintiff thereafter amended her complaint, and filed an amended motion for conditional certification as well as new affidavits. By Order dated August 7, 2012 (Doc. No. 68), the Court directed that Defendant's motion to strike would be deemed to apply to the amended motion for conditional certification. The new affidavits differed substantially from the prior two affidavits, rendering moot most of the objections asserted by Defendant in its motion to strike. But Defendant did challenge as inadmissible hearsay declarants' statements that at the time of training, the trainer or supervisor advised them that the practices regarding logging in and out about which they were advised were the same throughout all call centers in the company.

Assuming, without deciding, that Defendant is correct that the requirements of Rule 56(e) apply at this stage, the Court cannot agree that the affidavits should be stricken. Defendant does not allege that the facts set forth in the affidavits "*cannot* be presented in a form that would be admissible in evidence," as Rule 56(c) requires. Rule 56(c)(2) (emphasis added). Plaintiff may well be able to present testimony from the trainers or supervisors following discovery. In any event, the declarants do have personal knowledge of the training provided to them, and their statements that the trainers or supervisors who provided the training advised them that the same policies applied throughout Charter's call centers are likely admissible under Rule 801(d)(2)(C) or (D) of the Federal Rules of Evidence, as statements made "by a person whom the party authorized to make a statement on the subject," or "by the party's agent or employee on a matter within the scope of that relationship and while it existed." FRE 801(d)(2)(C) and (D). It is fair to assume that Defendant did not have people provide training who were not authorized to speak regarding the company's training procedures.

As such, at this stage and on this record, Defendant's motion to strike the affidavits will be denied. Whether the facts set forth in the declarations will ultimately be admissible and sufficient to prove Plaintiff's allegations are questions for another day. *See, e.g., Schmaltz v. O'Reilly Auto. Stores, Inc.*, No. 4:12–CV–1056–JAR, 2013 WL 943752, at *2 (Mar.11, 2013) (describing the standard as a "modest factual showing, based upon the pleadings and affidavits, that the proposed class were victims of a single decision, policy, or plan") (quoting *Ondes*, 2011 WL 6152858, at *3 (citations omitted)).

Although Defendant offers evidence of contrary company-wide policies, the Court cannot weigh evidence at this juncture. *See Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009) (noting that the court does not make credibility determinations or findings of fact with respect to contradictory evidence submitted by parties at this initial stage). Similarly, Defendant contends that statements from Plaintiff's deposition contradict her allegations, but the Court also is unable to make credibility determinations at this stage. *See id*. These and Defendant's other arguments regarding uniform management policies go to the merits of Plaintiff's claims; they are not yet ripe for resolution. *See Dernovish*, 2010 WL 143692 at *2 (conditionally certifying collective action involving call center telephone representatives being required to log in to computer systems before start of shift, despite arguments by defendant that their written policies prohibited such practices and that employees have different managers and job requirements; these arguments go to merits, and plaintiffs made adequate showing of being similarly situated because they were all required to log in before they could work).

Finally, Defendant argues that a grant of certification here will create an unmanageable nationwide class. Defendant also contends that this case is unlike the few cases in which nationwide classes have been conditionally certified.

The Court does not agree with either assertion. At this stage, it is premature to assess the size and manageability of an opt-in class. Once the number of class participants is more certain, the Court will be in a position to make those assessments. Moreover, this case is quite similar to *Nicholson v. UTi Worldwide, Inc.*, where a nationwide class was certified based upon the declarations of employees who worked at

only one of the employer's facilities. No. 3:09-cv-722 JPG-DGW, 2011 WL 250563, at *4 (S.D. Ill. Jan. 26, 2011). Although that case is not binding on this Court, the distinction drawn there is instructive and has been relied upon in this District as well. The declarations submitted in *Nicholson*, like those submitted in the current case, contained statements regarding practices at the facilities where the declarants worked and assertions that trainers from other facilities had informed them that the same practices were followed at those other facilities. *Id.* By contrast, in *Andrews v. Appletree Answering Serv.*, the court refused to certify a multi-facility class where the only evidence of a uniform company-wide policy was the plaintiffs' experience of receiving calls diverted to them from other company facilities. No. 4:11CV2227 RWS; 2012 WL 2339322, at *3 (E.D. Mo. June 19, 2012). In refusing to certify on the basis of such allegations, the court noted that the plaintiffs had failed to demonstrate that they had personal knowledge of the policies at other locations. *Id.*, at *3. The court noted, however, "substantial allegations that putative class members were the victims of a single decision, policy or plan" could be shown "where the declarants had been informed of similar practices in other locations." *Id.*; *but see Wynn v. Express, LLC*, No. 11 C 4588, 2012 WL 874559, at *3 (N.D. Ill. Mar. 14, 2012) (noting that declarations from individuals at eleven facilities would be insufficient to support conditional certification of a class including all of defendant's facilities). In light of the reasoning set forth above the Court is convinced, at this juncture, that conditional certification with respect to employees at all eight call centers is appropriate.

Defendant also contends that any class conditionally certified here should not include employees who were hired after September 1, 2011. Plaintiff agrees that such a restriction is appropriate. Plaintiff also has admitted that no off-the-clock work was required or performed during training. On the basis of the record and Plaintiff's admissions regarding the correction of the FLSA violations alleged here on and after September 1, 2011, the Court will exclude from the conditionally certified class all persons hired on and after September 1, 2011 and all person still in training on that date. *See Fenn v. Hewlett-Packard Co.*, No. 1:11–cv–00244–BLW, 2012 WL 1883530, at *4-5 (D. Idaho May 17, 2012) (holding that a plaintiff's admission that an employer's alleged unlawful compensation practices ended at a certain date, restricts the class definition to the time period prior to that date). Finally, because the log in requirements did not apply to trainees, the Court will exclude from the conditional class any employees who were employed by Defendant but only worked as trainees.

The record establishes and Plaintiff does not deny that as a result of a new time keeping system implemented on September 1, 2011, the FLSA violation alleged here was cured on that date. Therefore, this suit only addresses time worked before September 1, 2011, by members of the conditionally certified class.

## II. Notice to Class Members

Defendant also objects to portions of Plaintiff's proposed Notice to Putative Class Members. (Doc. No. 58-7.)

Defendant first asserts that the 120 day opt-in period Plaintiff requests is excessive. The Court agrees that a four month opt-in period is excessive and not

necessary here, especially given the restricted class definition adopted by the Court. Accordingly the Court approves a sixty day opt-in period. *See, e.g., Greenwald v. Phillips Home Furnishings, Inc.*, 2009 WL 1025545 (E.D. Mo. April 15, 2009) (approving a 45-day opt-in period); *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 501 (D. Neb. 2009) (holding that 45-days "is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit"); *Boyle v. Barber & Sons, Co.*, 2004 WL 5897946, at *5-6 (W.D. Mo. May 21, 2004) (approving a 30-day opt-in period).

Defendant also objects to the internal posting of Plaintiff's notice on the ground that there is no evidence that Defendant's current employees, who are most likely to see a posted notice, are difficult to locate or reach by way of first-class mail. The Court agrees that notice by way of first-class mail notice is sufficient here. *Martinez*, 265 F.R.D. at 500-01 (refusing internal posting on the ground that "[t]here is no evidence personal mailing will be an unreliable means of delivering notice").

Finally, Defendant objects to Plaintiff's suggestion that it be required to provide counsel with the phone numbers and e-mail addresses of its employees. Plaintiff notes that these additional contact methods are requested because the possibility exists that the addresses Defendant has for former employees will no longer be accurate. The Court sees no reason, however, that Plaintiff should be provided both e-mail addresses and personal telephone numbers and finds the prospect of providing personal telephone numbers to Plaintiff to be unduly invasive of employees' and former employees' privacy. For these reasons, the Court approves the provision of email addresses, in addition to

mailing addresses, but does not approve Plaintiff's request for personal telephone

members.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for an order conditionally certifying a collective action under the FLSA is **GRANTED**. (Doc. No. 58.)

**IT IS FURTHER ORDERED** that the Court conditionally certifies a class of all of Defendant's present and former non-exempt call center employees who held or hold the job title, "advisor," and who were hired and had completed training before September 1, 2011, and who worked at Defendant Charter Communications, LLC's call centers located in Town and Country, Missouri; Walker, Michigan; Louisville, Kentucky; Greenville, South Carolina; Vancouver, Washington; Rochester, Minnesota; Fond du Lac, Wisconsin; and Worcester, Massachusetts. The conditionally certified class shall not include persons who were hired by Defendant but worked only as trainees.

**IT IS FURTHER ORDERED** that Plaintiff's motion to facilitate class notice and approve her Notice to Putative Class Members and Proposed Consent to Join (Doc. Nos. 58-5 and 58-6) is **GRANTED in part and DENIED in part** as follows:

a) Plaintiff's Notice to Putative Class Members is amended to provide for an opt-in period of 60 days rather than 120 days,

b) the paragraphs entitled "**DESCRIPTION OF THE LAWSUIT**" and **"WHO DOES THIS LAW SUIT AFFECT?"** are stricken from the proposed notice. The parties shall confer and within seven days of the date of this Order submit to the Court replacement paragraphs incorporating the definition of the

class conditionally certified by the Court.  If the parties are unable to agree on replacement language for the stricken paragraphs they shall each file their proposed language at that time.  Apart from these paragraphs, no other changes or objections to the proposed notice will be permitted; and

    c) Plaintiff's Proposed Consent to Join is approved as submitted.

**IT IS FURTHER ORDERED** that Defendant shall provide to Plaintiff's counsel within fourteen (14) days of the date of this Order, and in readable electronic format, the mailing addresses and email addresses of all putative members of the conditionally certified class.

                                                              */s/ Audrey G. Fleissig*
                                                              AUDREY G. FLEISSIG
                                                              UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2014..