UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PENNY DAVENPORT, et al., individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:12CV00007 AGF |
| CHARTER COMMUNICATIONS, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This putative class and collective action is before the Court on several related

motions. Defendant Charter Communications, LLC ("Charter") moves (Doc. No. 183)

for judgment on the pleadings as to Plaintiffs' request for class relief in their claim for

unpaid overtime wages under the Kentucky Wages and Hours Act ("Kentucky Act"), Ky.

Rev. Stat. § 337.010 et seq., (Count VI), and as to Plaintiffs' entire claim for unpaid

overtime wages under the Michigan Minimum Wage Law ("Michigan Act"), Mich. Comp.

Laws § 408.381 et seq.[1] (Count VII). Plaintiffs move (Docs. No. 143 & 145) to certify

Counts VI and VII as class actions pursuant to Federal Rule of Civil Procedure 23.

Alternatively, in the event that the Court dismisses Count VI's request for Rule 23 class

relief, Plaintiffs move (Doc. No. 191) for conditional certification of Count VI as an opt-in

---

[1] The Court notes that the Michigan Minimum Wage Law, Mich. Comp. Laws § 408.381 et seq., was repealed, effective May 27, 2014, and replaced with the Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411, et seq. However, the relevant statutory provisions have not changed.

collective action under the Kentucky Act.   For the reasons set forth below, the Court shall **GRANT** Charter's motion for judgment on the pleadings and **DENY** Plaintiffs' motions for certification of Counts VI and VII as class actions under Rule 23 and for conditional certification of Count VI.[2]

## BACKGROUND

Penny Davenport and three other named Plaintiffs brought this action on their own behalf and on behalf of other former or present call center employees ("CCEs") who worked on an hourly basis at Charter's call centers in Missouri, Kentucky, or Michigan, at a time when Charter did not pay CCEs for the time it took them to access computer applications when beginning work and to close down computer applications at the end of work.

In Count VI of the amended complaint (Doc. No. 69), Plaintiffs seek unpaid overtime wages under the Kentucky Act, and in Count VII, Plaintiffs seek unpaid overtime wages under the Michigan Act.   Both counts are brought as putative class actions, and Plaintiffs have moved to certify both counts as class actions under Rule 23 of the Federal Rules of Civil Procedure.

Charter argues that Plaintiffs' class allegations and request for class relief under Count VI should be dismissed because Section 337.385 of the Kentucky Act prohibits class relief for overtime claims.   Charter also argues that Plaintiffs' entire claim under Count

---

[2] On July 2, 2014, Charter filed a request (Doc. No. 198) for oral argument on all pending motions.   However, in a telephone conference held on July 17, 2014, Charter and Plaintiffs informed the Court that oral argument was unnecessary regarding the motions considered in this opinion.

VII should be dismissed because, as an employer subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., Charter is exempt from liability under the Michigan Act.

Regarding Count VI, Plaintiffs argue that the authority on which Charter relies regarding its interpretation of the Kentucky Act is not binding, and in any event, any state prohibition on class actions would be preempted by Rule 23 and the National Labor Relations Act, 29 U.S.C. § 151, et seq. Regarding Count VII, Plaintiffs argue that Charter's admission in its answer to the amended complaint that the two named plaintiffs who worked at Charter's Michigan call center were "entitled to the rights, protections, and benefits provided under [the Michigan Act]" defeats its exemption argument, or alternatively, that Charter waived its right to claim exemption under the Michigan Act because it failed to plead that argument as an affirmative defense.

In the alternative, Plaintiffs also move separately for conditional certification of Count VI as an opt-in collective action in the event that the Court dismisses Count VI's request for Rule 23 class relief. Plaintiffs argue that the Court may borrow the conditional certification standards applicable to opt-in collective actions brought under the FLSA, 29 U.S.C. § 216(b), to conditionally certify an opt-in collective action under the Kentucky Act. Charter opposes this motion on the grounds that Plaintiffs have not pleaded the relief requested; the Kentucky Act does not authorize opt-in collective actions; and if the Court were to hold that the Kentucky Act incorporates the FLSA's standards for opt-in collective actions, Plaintiffs' collective action would be time-barred in any event.

## DISCUSION

### Charter's Motion for Judgment on the Pleadings

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F .3d 797, 803 (8th Cir. 2002) (citation omitted). When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [his] favor." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citation omitted). The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* at 65. "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)).

### Kentucky Act Claim (Count VI)

#### I.     Class Relief Under the Kentucky Act

The initial question presented by the pending motions is whether Kentucky law prohibits class actions in employee suits seeking unpaid overtime wages under section 337.385 of the Kentucky Act. When resolving this question, this Court is bound by the decisions of the Kentucky Supreme Court, and in the absence of a decision on point, as here, this Court must attempt to predict what the Kentucky Supreme Court would decide if

it were to address the issue.  *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011); *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011). In this regard, the Court may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data.  *Raines*, 637 F.3d at 875.

Under Kentucky law, "[t]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect."  *Wade v. Poma Glass & Specialty Windows, Inc*., 394 S.W.3d 886, 888 (Ky. 2012).  "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning.  And we read the statute as a whole and in context with other parts of the law." *Id.* (citations omitted).  Kentucky courts "presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes."  *Commonwealth v. Wright*, 415 S.W.3d 606, 609 (Ky. 2013).

Section 337.385 of the Kentucky Act, governing employer liability for unpaid overtime wages, states in relevant part:

> (1) Except as provided in subsection (3) of this section, any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court.
>
> (2) If, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he or she had reasonable grounds for believing that his or her act or omission was not a

violation of KRS 337.020 to 337.285, the court may, in its sound discretion, award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section. Any agreement between such employee and the employer to work for less than the applicable wage rate shall be no defense to such action. *Such action may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself, herself, or themselves.*

Ky. Rev. Stat. §§ 337.385(1)-(2) (emphasis added).

By contrast, another provision within the same statute, governing employer liability for wage discrimination on the basis of sex, states in relevant part:

 (1) Any employer who violates the provisions of KRS 337.423 [prohibiting wage discrimination because of sex] shall be liable to the employee or employees affected in the amount of their unpaid wages, and in instances of willful violation in employee suits under subsection (2) of this section, up to an additional equal amount as liquidated damages.

(2) *Action to recover the liability may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself, herself, or themselves and other employees similarly situated.* The court in the action shall, in cases of violation in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

Ky. Rev. Stat. §§ 337.427(1)-(2) (emphasis added).

These provisions cannot be considered in isolation but must be construed together, as part of one statutory scheme.   *Wright*, 415 S.W.3d at 609.   Read together, the plain language of the statute suggests that, for wage discrimination actions, the Kentucky legislature intended to permit employees to sue in both an individual capacity in behalf of themselves and a representative capacity in behalf of similarly situated employees.   But for overtime actions, such as the one raised under Plaintiffs' Count VI, the legislature intended to permit employees to sue only in an individual capacity.   As Charter notes, the

Kentucky legislature enacted the overtime liability provision eight years after it enacted the provision governing wage discrimination actions. *See* Ky. Rev. Stat. § 337.385 (enacted 1974); § 337.427 (enacted 1966). Had the legislature intended to permit employees to bring overtime actions in a representative capacity, it would have included the "similarly situated" language it included in the wage discrimination provision.

In line with this interpretation, the Kentucky Court of Appeals has held that "the text of KRS 337.385(1)[3] provides a clear expression of intent that class actions are not permitted." *Toyota Motor Mfg., Ky., Inc. v. Kelley*, No. 2012–CA–001508–ME, 2013 WL 6046079, at *9 (Ky. Ct. App. Nov. 15, 2013), *review denied*, No. 2013-SC-000804-DE, 2014 Ky. LEXIS 201 (Ky. Apr. 9, 2014). At issue in *Kelley* was whether a lower court erred in reopening a dismissed employee action for unpaid wages under Section 337.385 of the Kentucky Act and in certifying that action as a class action. The Kentucky appellate court held, first, that the case should not have been reopened, but second, "even if the trial court had properly reopened this case . . ., KRS 337.385(1) does not permit class actions and the trial court improperly certified a class." *Id.* The appellate court relied on the language of the statute, reasoning that "the effect of the 'for and in behalf of' language is to limit the individuals who may participate in an action under the Act to those who actually bring the action." *Id.*

---

[3] Although *Kelley* references Section 337.385(1), a 2013 amendment separately enumerated the relevant language as Section 337.385(2); other than the renumbering, the statute did not change in relevant part. *See* 2013 Ky. Acts page no. 25.

Plaintiffs argue that the *Kelley* court's statutory interpretation is unreliable because it is "mere dicta" within an unpublished decision. But an alternative holding is not mere dicta, *see Swiss Oil Corp. v. Shanks*, 270 S.W. 478, 479 (Ky. 1925) ("[A]n additional reason for a decision, brought forward after the case has been disposed of on one ground, [cannot] be regarded as dictum.") (citations omitted), and in any event, nothing prevents the Court from considering dicta or unpublished authority. Rather, in the absence of controlling law from the Kentucky Supreme Court, it is the duty of this Court to consider all reliable data, including considered dicta, to ascertain what the state law is and apply it. *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *Raines*, 637 F.3d at 872. And "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West*, 311 U.S. at 237. Plaintiffs have not put forth, and the Court has not found, any other persuasive data to contradict the plain language of the statute and the holding of the Kentucky appellate court. From all available evidence, the Court believes that the Kentucky Supreme Court would find that Section 337.385 of the Kentucky Act prohibits class actions in employee suits seeking unpaid overtime wages.

## II.    Application of Rule 23

Having found that Section 337.385 of the Kentucky Act prohibits Plaintiffs from pursuing their overtime claim under Count VI as a class action, the Court must next decide

whether Count VI may nonetheless proceed as a class action under Federal Rule of Civil Procedure 23.

In *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 396 (2010), the Supreme Court considered whether a New York statute prohibiting class actions in suits seeking penalties or statutory minimums precluded a federal district court from entertaining a class action under Rule 23. The Court set out the "familiar" framework for resolving conflicts between federal rules and state law: first, the court must determine whether the federal rule answers the question; if it does, the federal rule governs, notwithstanding a conflicting state law, unless application of the federal rule would run afoul of the Rules Enabling Act, 28 U.S.C. § 2072(b), which states that federal rules shall not "abridge, enlarge or modify any substantive right." *Id.* at 398, 421-22. A majority of the Court held that because Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," Rule 23 governs whether a given suit may proceed as a class action, notwithstanding a conflicting state law, unless the application of Rule 23 violates the Rules Enabling Act. *Id.* at 401, 429-30. But there was no majority consensus regarding how to determine whether the application of Rule 23 violates the Rules Enabling Act.

Justice Scalia, writing on behalf of himself and three other justices, concluded that a federal rule does not violate the Rules Enabling Act as long as it "governs only the manner and the means by which the litigants' rights are enforced." *Id.* at 407. Justice Scalia's approach placed exclusive focus on the federal rule, reasoning that "it is not the substantive

or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Id.* Because Rule 23, like traditional joinder rules, "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits," Justice Scalia found that applying Rule 23 over a conflicting state law would not violate the Rules Enabling Act, regardless of whether the state law was procedural or substantive. *Id.* at 408-409 ("[T]he substantive nature of New York's law, or its substantive purpose, *makes no difference.*") (emphasis in original).

Justice Stevens concurred in the holding that Rule 23 governs whether a suit may proceed as a class action unless its application violates the Rules Enabling Act, and concurred in the Court's ultimate ruling that, with regard to the New York law, application of Rule 23 did not violate the Rules Enabling Act. But Justice Stevens came to that conclusion for a different reason than the other members of the plurality. Justice Stevens reasoned that courts cannot focus exclusively on the federal rule in deciding conflicts because such a focus would ignore the Rules Enabling Act's limitation that federal rules shall not "abridge, enlarge or modify any substantive right," and would ignore "the balance that Congress struck between uniform rules of federal procedure and respect for a State's construction of its own rights and remedies." *Id.* at 424-25. In that regard, Justice Stevens agreed with the four Justices in the dissent that "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Id.* at 416-17. Specifically, Justice Stevens concluded that, under the Rules Enabling Act, "[a] federal rule . . . cannot govern a

particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. But Justice Stevens went on to conclude that the New York law at issue was purely procedural, such that applying Rule 23 would not alter a state-created substantive right. In reaching this conclusion, Justice Stevens noted that the New York law "expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State." *Id.* at 432. This made it "hard to see how [the New York law] could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.*

When "no single rationale explaining the result [of a Supreme Court opinion] enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citations omitted). The Eighth Circuit has yet to address whether Justice Stevens' concurrence is the controlling opinion in *Shady Grove*. However, the majority of federal courts to consider the issue have found that Justice Stevens' opinion controls. *See, e.g., James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) ("Justice Stevens concurred, and the Tenth Circuit has understood his concurrence to be the controlling opinion in *Shady Grove*."); *Leonard v. Abbott Labs., Inc.*, No. 10–CV–4676(ADS)(WDW), 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012) ("[T] he Court agrees with the majority of district and circuit courts that have

found Justice Stevens [*sic.*] concurring opinion was on the 'narrowest ground' and therefore is the controlling opinion.") (collecting cases); *McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 747 (N.D. Ohio 2010) ("Because Justice Stevens' concurring opinion would permit some state law provisions addressing class actions—whereas Justice Scalia's opinion . . . would broadly prohibit any state law that conflicted with Rule 23—Justice Stevens' opinion is the narrowest and, thus, controlling opinion."); *Bearden v. Honeywell Int'l*, No. 3:09–1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010); *Lisk v. Lumber One Wood Preserving, LLC*, No. 3:13–cv–01402–AKK, 2014 WL 66512, at *6-7 (N.D. Ala. Jan. 8, 2014); *Phillips v. Philip Morris Cos., Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio Mar. 21, 2013).

In applying Justice Stevens' approach, particularly with regard to determining whether a state law is so "intertwined with a state right or remedy that it functions to define the scope of the state-created right," courts have looked to whether "the limiting provision is found within the text of a state statute that confers a substantive right and applies only to cases brought under the statute."  *See, e.g., Bearden*, 2010 WL 3239285, at *10 (applying *Shady Grove*'s concurrence to strike class allegations where "[t]he very statutory provision that authorizes a private right of action for a violation of the [Tennessee Consumer Protection Act] limits such claims to those brought 'individually.'"); *Lisk*, 2014 WL 66512, at *6-7 (dismissing class claim under Alabama Deceptive Trade Practices Act because that statute's "bar on private class actions . . . is contained in the same section of the Alabama Code that creates a private right of action under the ADPTA, . . . and its text

limits its application to private rights of action brought under the ADPTA . . . ."); *Phillips*, 290 F.R.D. at 481 ("Following *Shady Grove*, courts have looked to whether the state law in question applies to all claims, or whether its reach is limited to certain claims, as an indication of whether it substantially impacts state substantive rights.").   The Court agrees with this approach.

The Court concludes that the class action restriction in Section 337.385 of the Kentucky Act is "so intertwined" with that statute's rights and remedies that applying Rule 23 in its stead would "abridge, enlarge or modify" a substantive right in violation of the Rules Enabling Act.   Unlike the New York law at issue in *Shady Grove*, the Kentucky Act's class action restriction is found within the very statutory provision that authorizes a private right of action for unpaid overtime wages, and the restriction applies only to claims for violation of sections 337.020 to 337.285 of the Kentucky Act.   *See* Ky. Rev. Stat. §§ 337.385(1)-(2).   The class action restriction in Section 337.385 functions to define the scope of Plaintiffs' substantive rights under the Kentucky Act; therefore, Rule 23 does not apply.

### III.   NLRA Preemption

Plaintiffs also argue that a state law prohibition on class actions for employee overtime claims would be preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., because collective and class litigation has been held to be concerted activity under section 7 of the NLRA, 29 U.S.C. § 157.

State law is preempted if a court determines that (1) Congress expressly preempts state law; (2) Congress has pervasively regulated conduct in a field manifesting its intent to preempt state law; or (3) the state law conflicts with federal law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992); *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990); *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1141 (E.D. Mo. 2007). Because "[t]he NLRA contains no express pre-emption provision," state law is not preempted "unless it conflicts with federal law or would frustrate the federal scheme, or unless we discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Bldg. & Constr. Trades Council v. Associated Builders and Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224-25 (1993). Courts should be "reluctant to infer pre-emption" because "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Id.* at 224.

Two preemption doctrines have developed around the NLRA. The first, announced in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*"), forbids state and local regulation of activities that are even arguably protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, because "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board[.]" 359 U.S. at 245. "This rule of pre-emption is designed to prevent conflict between, on the one hand, state and local regulation and, on the other, Congress' integrated

scheme of regulation, embodied in §§ 7 and 8 of the NLRA, which includes the choice of the NLRB, rather than state or federal courts, as the appropriate body to implement the Act." *Bldg. & Constr. Trades Council*, 507 U.S. at 225 (citations omitted); *Williams v. Watkins Motor Lines*, 310 F.3d 1070, 1072 (8th Cir. 2002) (*Garmon* preemption "protects the jurisdiction of the National Labor Relations Board by displacing state jurisdiction over conduct which is arguably within the compass of § 7 or § 8 of the Act.") (citations omitted).

The second doctrine, announced in *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Empt. Relations Comm'n*, 427 U.S. 132 (1976) ("*Machinists*"), prohibits state and local regulation of activities "that Congress intended to be unrestricted by any governmental power to regulate because it was among the permissible economic weapons in reserve" left "to be controlled by the free play of economic forces." 427 U.S. at 140-141 (citations omitted). This rule "preserves Congress' intentional balance between the uncontrolled power of management and labor to further their respective interests." *Bldg. & Constr. Trades Council*, 507 U.S. at 226 (citations omitted); *Southwestern Bell Tell. Co. v. Ark. Public Serv. Comm'n*, 824 F.2d 672, 674 (8th Cir. 1987) (*Machinists* preemption forbids "an intrusion on the economic self-help measures available to labor and management that Congress meant to be unregulated.").

Although Plaintiffs correctly describe the *Garmon* and *Machinists* doctrines, they fail to demonstrate that either doctrine is relevant here. Plaintiffs do not argue that their putative class action under the Kentucky Act is, or is arguably, within the exclusive jurisdiction of the NLRB to implicate *Garmon* preemption. To the contrary, Plaintiffs

concede the jurisdiction of this Court by choosing to file suit here, under the very state statute they now seek to abrogate.   If the Kentucky Act were preempted as an intrusion on NLRB jurisdiction, Plaintiffs could not maintain Count VI in this Court.   Neither do Plaintiffs argue that Congress clearly intended to leave the field of class or collective litigation unregulated to invoke *Machinists* preemption.   Again, just the opposite.   The very statutes and procedures under which Plaintiffs bring suit—Rule 23 and the FLSA—are evidence that Congress intended the field to be regulated.[4]   The *Machinists* doctrine does not apply.

In short, Plaintiffs' preemption argument is without merit.   Plaintiffs have not cited, and the Court has not found, any case holding that a state law regulating collective or class wage litigation is preempted by the NLRA.   The cases Plaintiffs cite regarding employer conduct affecting employees' ability to litigate collectively are inapposite. These cases have nothing to do with preemption.

As neither Rule 23 nor the NLRA abrogates the restriction on class actions set forth in Section 337.385 of the Kentucky Act, Charter is entitled to judgment on the pleadings as to Plaintiffs' class claims under Count VI.   For the same reasons, Plaintiffs' motion to certify Count VI as a Rule 23 class action must be denied.

---

[4]  Although Congress has regulated collective and class litigation to some extent, Plaintiffs do not argue that "Congress sought to occupy the field to the exclusion of the States." *Bldg. & Constr. Trades Council*, 507 U.S. at 224.   Nor does the Court find any basis on which to infer such field preemption.

## Michigan Act Claim (Count VII)

Charter also seeks judgment on the pleadings as to Plaintiffs' entire overtime claim under Count VII on the ground that the Michigan Act does not apply to employers subject to the FLSA, such as Charter.

The Michigan Act states:

1) This act does not apply to an employer that is subject to the minimum wage provisions of the fair labor standards act of 1938, 29 USC 201 to 219, unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided in this act. Each of the following exceptions applies to an employer who is subject to this act only by application of this subsection:

    (a) Section 4a does not apply.

Mich. Comp. Laws § 408.394(1)(a) (now § 408.420(1)(a)).   Section 4a, in turn, contains the overtime provisions under which Plaintiffs raise their claim in Count VII.   Mich. Comp. Laws § 408.384a (now § 408.414a).

Plaintiffs allege, and Charter admits, that Charter is subject to the FLSA.   (Doc. No. 69 at 10; Doc. No. 77 at 7.)   Thus, under the plain language of the statute, Charter is exempt from the overtime provisions of the Michigan Act, and Count VII must be dismissed as a matter of law.   *Hayes v. Rite Aid of Mich., Inc.*, No. 248015, 2004 WL 1335865, at *1-2 (Mich. Ct. App. June 15, 2004) (affirming dismissal of plaintiff's overtime claim under the Michigan Act, as well as sanctions against plaintiff for filing a meritless claim, where "plaintiff's claim was clearly subject to the FLSA" and the law was "well-settled" that "employers subject to the FLSA are exempt from the MMWL['s]" overtime provisions); *Arrington v. Mich. Bell. Tel. Co.*, 746 F.Supp.2d 854, 859 (E.D. Mich. 2010) (dismissing Michigan overtime claim for failure to state a claim because "the

exemption found in section 14 of the MMWL applies to the defendant in this case [who] is subject to the FLSA"); *Hazel v. Mich. State Employees Ass'n* , 826 F. Supp. 1096, 1102 (W.D. Mich. 1993) (where "[p]laintiffs admit in their Complaint that [defendant] is an employer subject to the Federal Fair Labor Standards Act," and defendant "does not dispute this allegation," the Michigan Act "bars the plaintiffs' recovery and the defendants are entitled to a judgment on the pleadings as to [the overtime claim]."); *Harris v. Reliable Reports Inc.*, No. 1:13–CV–210 JVB., 2014 WL 931070, at *7 (N.D. Ind. Mar. 10, 2014) (dismissing overtime claim under Michigan Act because "by virtue of Michigan Compiled Laws § 408.394(1)(a), the Michigan overtime provisions do not apply to [defendant], because [defendant] is subject to the FLSA."); *Smith v. Family Video Movie Club*, No. 11 C 1773, 2011 WL 3439276, at *1 (N.D. Ill. Aug. 4, 2011) (dismissing overtime claim under Michigan Act because "Plaintiffs agree that [defendant] is subject to the FLSA since Plaintiffs have included FLSA claims in the amended complaint").

Plaintiffs do not contest that Charter is subject to the FLSA or that employers subject to the FLSA are exempt from the overtime provisions of the Michigan Act. Instead, Plaintiffs oppose Charter's motion on pleading grounds, arguing that Charter's answer to Plaintiffs' amended complaint precludes Charter from claiming exemption under the Michigan Act.   Specifically, Plaintiffs argue that Charter's answer to paragraph 101 of the amended complaint constitutes a binding admission that it is subject to the Michigan Act or, alternatively, that Charter waived its exemption argument by failing to plead it as an affirmative defense.

Plaintiffs' arguments are without merit. Charter's answer to paragraph 101 does not admit that it is subject to the Michigan Act. At most, Charter admits that two of the named Plaintiffs "who worked in Michigan have been entitled to the rights, protections, and benefits provided under the MICHMWL, Mich. Comp. Laws § 408.381 et seq." (Doc. No. 77 at 12; Doc. No. 69 at 17.) This paragraph does not reference whether Charter is subject to the Michigan Act, and Charter elsewhere denies that it is liable under the Michigan Act. For example, in paragraph 102, Charter admits that the Michigan Act "exempts qualifying employers from its obligations" and denies that the "exemptions [are] not applicable herein." (Doc. No. 77 at 12; Doc. No. 69 at 17.) And in paragraphs 107 and 109, Charter denies that it violated the Michigan Act by failing to pay Plaintiffs overtime wages and denies that Plaintiffs are entitled to damages for unpaid overtime wages under the Michigan Act. (Doc. No. 77 at 12-13; Doc. No. 69 at 18.)

Neither did Charter waive its exemption argument by failing to plead it as an affirmative defense. Plaintiffs fail to cite a single case holding that the Michigan Act's FLSA exemption is an affirmative defense. Instead, Plaintiffs cite cases holding just the opposite, namely, that where it is undisputed that the defendant is subject to the FLSA, as here, plaintiffs fail to state a prima facie claim for unpaid overtime wages under the Michigan Act as a matter of law. *See Arrington*, 746 F. Supp.2d at 859; *Hayes*, 2004 WL 1335865, at *1-2.[5] Accordingly, Charter is entitled to judgment on the pleadings as to

---

[5] Plaintiffs' citation to *Allison v. Pepsi Bottling Group, Inc.*, No. 5:03-cv-244, 2004 U.S. Dist. LEXIS 29763 (W.D. Mich. June 28, 2004) is equally unavailing as that opinion was vacated following the decision of the Michigan Court of Appeals in *Alexander v.*

Count VII.   For the same reasons, Plaintiffs' motion to certify Count VII as a Rule 23 class action must be denied.

**Plaintiffs' Request for Conditional Certification of Count VI**

Because the Court dismisses Plaintiffs' request for class relief under Count VI's Kentucky Act claim, the Court now considers Plaintiffs' alternative motion for conditional certification of Count VI.   In asking the Court to conditionally certify Count VI as an opt-in collective action under the Kentucky Act, Plaintiffs state that "[c]ourts apply the same conditional certification standards to opt-in collective actions brought under state law as they apply to opt-in collective actions brought under the Fair Labor Standards Act ('FLSA'), 29 U.S.C. § 216(b)."   (Doc. No. 191 at 2.)   Plaintiffs cite *Blount v. U.S. Security Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013) and *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012) for this proposition.   But the D.C. Minimum Wage Act at issue in *Blount* and *Dinkel* tracks the language of the FLSA in providing:

> [An] [a]ction to recover damages sued for under this subchapter may be maintained in any court of competent jurisdiction . . . by any 1 or more employees for and on behalf of the employee and other employees who are similarly situated. No employee shall be a party plaintiff to any action brought under this subchapter unless the employee gives written consent to become a party and the written consent is filed in the court in which the action is brought.

D.C. Code § 32-1012(b) (tracking the nearly identical language found in 29 U.S.C. § 216(b)).

---

*Perfection Bakeries*, 705 N.W.2d 31, 33-34 (Mich. Ct. App. 2005), in which the Michigan court affirmed dismissal of plaintiffs' Michigan Act claim under the statutory exemption by applying the plain language of the statute.   *See Alexander*, 705 N.W.2d at 165-66; *Allison*, No. 5:03-CV-244, 2006 U.S. Dist. LEXIS 40617 (W.D. Mich. June 19, 2006) (vacating June 28, 2004 opinion and entering judgment in favor of defendant).

In other words, the D.C. Minimum Wage Act, like the FLSA, explicitly authorizes opt-in collective actions brought on behalf of "similarly situated" employees who provide written consent. This language is absent from the Kentucky Act. Ky. Rev. Stat. § 337.385. Therefore, *Blount* and *Dinkel* are irrelevant.[6] Plaintiffs do not provide the Court with any authority to apply the FLSA's two-step conditional certification process to their overtime claim under the Kentucky Act, and the Court finds no authority to do so.

Because the Court holds that it has no authority to conditionally certify Plaintiffs' claim under Count VI as an opt-in collective action, the Court need not reach Charter's alternative argument that a FLSA-like collective action would be time-barred under the statute of limitations found in Ky. Rev. Stat. § 413.120(2) because the only named Plaintiff asserting a Kentucky claim did not file a timely written consent to join the action. *See* 29 U.S.C. § 256. However, the Court notes that Plaintiffs' response to Charter's statute of limitations argument only further supports the Court's ruling today. Plaintiffs respond that their claim is timely, notwithstanding any failure to file a written consent, because the Kentucky Act, "unlike the FLSA, does not specify any particular method of consenting to participate." (Doc. No. 194 at 5.) Precisely. The Kentucky Act does not specify consent procedures for opt-in collective actions because it does not contemplate such actions. The Court will deny Plaintiffs' motion.

---

[6] Moreover, in *Dinkel*, the parties "agree[d] that conditional certification is governed by the same standard under the FLSA and DC-MWA," so the court had no occasion to question the parties' assumptions. *See Dinkel*, 880 F. Supp. 2d at 53 n.3.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for judgment on the pleadings is **GRANTED** as set forth above.   (Doc. No. 183.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion to certify Count VI of the first amended complaint as a class action is **DENIED**.   (Doc. No. 143.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion to certify Count VII of the first amended complaint as a class action is **DENIED**.   (Doc. No. 145.)

**IT IS FURTHER ORDERED** that Plaintiffs' combined motion for conditional certification of Count VI is **DENIED**.   (Doc. No. 191.)

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2014.