UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PENNY DAVENPORT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-00007-AGF |
| | ) | |
| CHARTER COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This conditionally certified collective action for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., is before the Court on Defendant's Motion to Strike Expert Disclosure and Report. Defendant Charter Communications, LLC ("Charter") moves to strike Plaintiffs' expert disclosure of L. Scott Baggett and his corresponding report pursuant to Rules 26(a)(2)(B) and 37(c)(1) of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendant's motion will be denied, and the Court will grant Plaintiffs leave to submit a supplemental report; however, Plaintiffs shall bear the cost of an additional deposition of Dr. Baggett, should Defendant choose to re-depose him.

**BACKGROUND**

Penny Davenport and three other named Plaintiffs brought this action on their own behalf and on behalf of similarly situated call center employees who worked on an hourly

basis at Charter. Plaintiffs claim that Charter violated the FLSA, 29 U.S.C. § 207, and the state wage and hours laws of Missouri, Kentucky, and Michigan, by failing to pay them for the time it took them to access computer applications when beginning to work and to close down computer applications at the end of work.

At a hearing on November 16, 2015, Plaintiffs' counsel stated that Plaintiffs intended to tender an expert report showing that active administrator data revealed Plaintiffs performed work preparation tasks prior to clocking in. Plaintiffs proffered the expert report of Dr. L. Scott Baggett the next day, along with two PDF files that contained damage calculations performed by Dr. Baggett. Plaintiffs' deadline for disclosing expert witnesses subsequently passed.

In his report, Dr. Baggett explained that his damage calculations were generally based on a comparison of active administrator data with clock punch data on a daily basis for each opt-in Plaintiff, to the extent possible. For opt-in Plaintiffs with missing active administrator data, Dr. Baggett attested that he averaged data from weeks with active administrator data to supplement those weeks without; for opt-in Plaintiffs with insufficient or no active administrator data, Dr. Baggett reported that he extrapolated an average of unpaid time from those opt-in Plaintiffs for whom data was available. The expert report indicated that for employees with three or more days of active administrator data, the following formula was utilized: (clocked hours + pre-shift time + post-shift time)/clocked hours. This formula, according to the report, produced an overall ratio, across all employees, of 1.0226 (indicating that employees worked an additional 2.26% of their recorded payroll hours, on average).

Following this initial disclosure, Charter's counsel complained to Plaintiffs' counsel that Dr. Baggett's methodology was not sufficiently expressed in his report. For example, although Dr. Baggett's report explained that he determined a Plaintiff's uncompensated time by comparing her clock-in time with the "first activity of each day" reflected in the active administrator data, Dr. Baggett did not provide explanation as to how the "first event" was determined. Therefore, on January 4, 2016, counsel for Charter asked Plaintiffs' counsel for explanations of Dr. Baggett's calculations. On January 7, 2016, Plaintiffs disclosed Dr. Baggett's first addendum, which purported to address these deficiencies.

In the addendum, Dr. Baggett gave additional information on the assumptions he used in determining his damage calculations. Dr. Baggett explained that the active administrator data included date and time information for Windows login events, and that after adjusting the active administrator times for the appropriate time zone, he calculated any difference between that time and the employee's clock-in and clock-out times. On March 5, 2016, Plaintiffs supplemented Dr. Baggett's damages calculations, this time including an Excel spreadsheet containing supplemental damage calculations. Charter argues, however, that the Excel spreadsheet produced "contained no formulas" (Doc. No. 388 at 5), and that despite expending time and effort, Charter could not replicate Dr. Baggett's results.

During Dr. Baggett's deposition on March 21, 2016, Charter learned that Dr. Baggett had also utilized the declarations of over 530 opt-in Plaintiffs in his calculations, and had relied on those declarations when they differed from the active administrator data. Additionally, Dr. Baggett's testimony appeared to indicate that in some cases, particularly where a Plaintiff's clock-in time was *prior* to the beginning of active administrator data, he

3

nonetheless assigned additional uncompensated time "based on the declarations." (Baggett Dep. at 156:23-24.) Therefore, Charter argues that Dr. Baggett "actually turned overpayments into underpayments." (Doc. No. 388 at 7.)

Charter complains that the methodology disclosed in the expert report differed in other ways from the methodology actually used. At deposition, Dr. Baggett testified to using a slightly altered procedure wherein he produced a ratio for each workweek for which he had active administrator data; calculated the average of those ratios to be 1.0227746; calculated a specific ratio for each opt-in Plaintiff and applied that ratio to the Plaintiff's weeks without active administrator data; and finally, recalculated the average percentage of unpaid time using all workweeks for Plaintiffs with active administrator data, a number that came to be 1.02359. Dr. Baggett testified that it was in fact this number (1.02359) instead of the disclosed number (1.0226) that he utilized in performing his final damages calculations.

Charter also alleges that Dr. Baggett's report failed to mention that he relied upon so-called "Badge Swipe data" to "spot check" active administrator data and to verify time zone information. Finally, Charter takes issue with Plaintiffs' disclosure of the supporting PDFs and Excel spreadsheet, because these did not include the formulas utilized by Dr. Baggett even though these items were specifically requested.

Charter contends that even considering both addenda and Dr. Baggett's deposition, it remains unable to replicate Dr. Baggett's results. Thus, in the instant motion, Charter alleges that it has been harmed by Dr. Baggett's allegedly incomplete disclosure, which it asserts is insufficient under Rule 26, and seeks to have Dr. Baggett's disclosure and corresponding report stricken.

Plaintiffs admit that Dr. Baggett's report and supplements "do not mention the declarations he relied on," (Doc. No. 393 at 11) but posit that Dr. Baggett did proceed to "produce[] those declarations in compliance with Defendant's request and he fully, candidly, and repeatedly testified regarding his use of those declarations in his deposition." *Id.* With regard to Badge Swipe data, Plaintiffs respond that in fact, Dr. Baggett testified that he used Badge Swipe data only to confirm his calculations with regard to time zone adjustments. (Doc. No. 393 at 12.) Plaintiffs argue that, even if Charter was somehow harmed by Dr. Baggett's purportedly deficient report, it failed to mitigate any such harm because it failed to notify Plaintiffs' counsel of any such deficiencies between January 4, 2016, when it first requested explanation, and April 21, 2016, one day before filing the instant motion. Moreover, Plaintiffs argue that even if Dr. Baggett's report was deficient prior to the issuance of the two addenda, excluding his expert testimony is the most severe possible sanction and the Court has an obligation to explore the least severe sanction. Plaintiffs cite a number of cases from district courts within the Eighth Circuit in which a lesser sanction, including a supplemental report or additional deposition testimony from the disputed expert, was imposed instead. Plaintiffs also cite to the Eighth Circuit's four-part test for determining whether untimely disclosed expert testimony should be disallowed, and argue that under each of the four factors, Dr. Baggett's disclosure and report need not be stricken. *Patterson v. F.W. Woolworth Co.*, 786 F.2d 874 (8th Cir. 1986). And although arguing that an additional deposition of Dr. Baggett is unnecessary, Plaintiffs stipulate that they are willing to produce Dr. Baggett for such a deposition.

In its reply brief, Charter emphasizes that Plaintiffs, not Charter, bear the burden for producing a full and thorough disclosure, and that Dr. Baggett's deposition testimony does not ameliorate the purported insufficiencies in his report. Charter reiterates its position that even considering Plaintiffs' untimely supplements to Dr. Baggett's report, it remains deficient under Rule 26. Finally, Charter proffers that it has been subject to considerable expense due to Plaintiffs' deficient disclosure.

## DISCUSSION

The court possesses the inherent power to impose sanctions in matters arising from discovery abuses. *See Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280 (8th Cir. 1995); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (district courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process"). A written report of an expert submitted pursuant to Rule 26(a) must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The 1993 Advisory Committee Notes for Rule 26(a)(2) provide in relevant part:

> This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties **have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.** Normally the court should prescribe a time for these disclosures in a scheduling order under Rule 16(b) . . .
> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, **must prepare a detailed and complete written report, stating the testimony the witness is expected to**

> **present during direct examination, together with the reasons therefor** . . . Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.

Fed. R. Civ. P. 26(a)(2) 1993 advisory committee notes (emphasis added). If a party fails to provide information required by Rule 26(a), and does not provide supplemental information pursuant to Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As noted in the advisory committee notes, Rule 26 disclosures are intended to provide opposing counsel a reasonable opportunity to prepare for cross-examination and prepare controverting expert witnesses. Thus, the Court's principal concern in determining whether Plaintiffs' expert report complies with Rule 26 is whether the report gave Charter sufficient notice of the anticipated expert testimony and the opportunity to appropriately respond.[1] While Charter is correct that a deposition cannot serve to supplement a Rule 26 disclosure, which is the sole obligation and responsibility of the party proffering it, it is also true that subsequent expert declarations are allowable "[t]o the extent . . . they merely expand upon or clarify initial [expert] opinions that the defendants had an opportunity to test during discovery . . . [and if they] do not express new or contradictory opinions that might prejudice the defendants." *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 971 F. Supp. 2d 896, 903 (E.D. Mo. 2013).

---

[1] To the extent the instant motion makes an argument regarding Dr. Baggett's methodology itself, such an argument is more properly suited to a motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Court finds the sufficiency of Dr. Baggett's report to be a close question that hinges on whether the apparently omitted components of Dr. Baggett's opinions, to which he testified at deposition, represent mere clarifications or completely new opinions. It is true, as Charter argues, that fully disclosing Dr. Baggett's opinions was Plaintiffs' responsibility, and Charter was and is not obligated to rectify any deficiencies in the report by way of a deposition. "Discovery of expert opinion must not be allowed to degenerate into a game of evasion." *Voegeli v. Lewis*, 568 F.2d 89, 97 (8th Cir. 1977). But as the Sixth Circuit has explained, "Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).

"[T]he purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968). For this purpose to succeed, Rule 26 disclosures must be sufficiently detailed and "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006). According to Charter, the allegedly crucial information that should have been disclosed includes Dr. Baggett's use of declarations in his calculations, his reliance on Badge Swipe data, and the precise formula he applied to those Plaintiffs without any active administrator data. At least with regard to the use of a divergent methodology, which included the use of a damages multiplier distinguishable from than the multiplier offered in the report (1.02359 versus the disclosed 1.0226), the Court agrees that Dr.

8

Baggett's deposition testimony included new opinions that were not included in his disclosure and report. And Plaintiffs' arguments regarding untimely expert disclosure are unavailing, because the opinions Charter highlights were not simply untimely disclosed; instead, as Charter notes, they do not appear in the original disclosure and report or any of the supplements, but instead have been invoked only at deposition.

Nonetheless, even to the extent the Court determines that Dr. Baggett's initial disclosure and supplements are in violation of Rule 26, the Court retains discretion in determining the appropriate sanction for Plaintiffs' failure to relate the nuances of Dr. Baggett's methodology. The Court must also make a determination as to whether the violation is justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The Eighth Circuit has directed district courts to consider "several factors in determining whether a Rule 26 violation is justified or harmless, including: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Rodrick v. Wal-Mart Stores E., L.P.*, 666 F.3d 1093, 1096 (8th Cir. 2012) (internal quotation omitted).

Here, the Court is not persuaded that Charter has suffered any continuing harm; instead, it seems that the harm suffered, if any, was limited to Charter's "prepar[ation] for and [taking] Dr. Baggett's deposition without crucial information that should have been disclosed in the original report[.]" (Doc. No. 388 at 12.) Charter's ability to cross-examine Dr. Baggett at deposition, and point out potential holes in his methods and testimony, belies the argument that Charter lacked sufficient notice from the proffered expert report and

supplements about Dr. Baggett's opinions. There does not appear to be ongoing prejudice or surprise to Charter. And with regard to the fourth *Rodrick* factor, Charter has not suggested any evidence, and neither does the Court find, that Plaintiffs acted with bad faith or willfulness in failing to produce an expert disclosure that meets the stringent requirements of Rule 26.

However, the Court agrees that Dr. Baggett's deposition revealed his apparent use of methodologies not fully explained in his report. Because striking Dr. Baggett's report is a severe and harsh sanction, the Court will instead give Plaintiffs another opportunity to cure deficiencies in the report, and will allow Plaintiffs to submit an additional supplement.[2] This supplement may not introduce new opinions, but should fully set forth the basis for Dr. Baggett's previously established opinions, including methodology, formulas, and all information upon which Dr. Baggett relied. The Court will also allow Charter an additional, subsequent deposition of Dr. Baggett at Plaintiffs' expense. *See, e.g. B-Y Water Dist. v. City of Yankton*, No. CIV. 07-4142, 2008 WL 4861692, at *2 (D.S.D. Nov. 10, 2008) (finding that an additional deposition was preferable to striking an expert's supplemental report when it relied upon a previously undisclosed methodology). The Court notes, however, that the additional deposition is not intended as a vehicle for Dr. Baggett to cure deficiencies in his report; instead, his report (as supplemented) must fully set forth his opinions with sufficient detail regarding the methodology used. *See, e.g., Finwall*, 239 F.R.D. at 501 (the report "must not be 'sketchy, vague or preliminary in nature.'"). A second opportunity for a

---

[2] In their briefing, Plaintiffs argue that "they can supplement Dr. Baggett's report, but Charter has already expressly refused Plaintiff's suggesting [sic] of doing so." (Doc. No. 393 at 16.) The Court will construe this as a request for leave to supplement Dr. Baggett's report, and will grant such leave.

deposition will cure any prejudice created by the forthcoming addendum to Dr. Baggett's initial report, or by any opinions upon which Dr. Baggett "expanded" in his first deposition. The availability of a second deposition will also minimize any disruption caused by the introduction of Dr. Baggett's testimony, as appropriate, at trial.

Finally, the Court agrees that Plaintiffs should produce Excel spreadsheets and other documents on which Dr. Baggett relies in their native format, assuming that such a production would not require the disclosure of privileged data, and will order Plaintiffs to do so.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Plaintiffs' Expert Disclosure of L. Scott Baggett and His Expert Report (Doc. No. 383) is **DENIED**, except as explained herein.

**IT IS FURTHER ORDERED** that Plaintiffs' request for leave to submit an addendum to Dr. L. Scott Baggett's expert report is **GRANTED**. Such addendum shall be disclosed on or before **July 22, 2016**.

**IT IS FURTHER ORDERED** that Plaintiffs shall make L. Scott Baggett available for an additional deposition, and have such deposition completed, **no later than August 19, 2016**. Plaintiffs shall bear the costs and expenses, including Defendant's costs and attorney fees for attendance, for said deposition.

**IT IS FINALLY ORDERED** that Plaintiffs shall submit any spreadsheets supporting the expert opinions of L. Scott Baggett in a native format that demonstrates formulas utilized in the calculations contained therein.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of July, 2016.